UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WALTER DIAZ (94-A-5053)
a/k/a ERIC ROGERS,

                                Plaintiff.

v.

**AFFIRMATION IN OPPOSITION TO PLAINTIFF'S MOTION FOR WRIT OF HABEAS CORPUS *AD TESTIFICADUM* FOR PLAINTIFF'S APPEARANCE AT TRIAL**

SUPERINTENDENT D. ARTUS,
SGT. KRUGER,
OFFICER A. BLANAR,
OFFICER J. MYERS,
OFFICER T. McCANN,
OFFICER G. BARLOW-HARPER,
OFFICER R. MICHIENZI,

FILE NO.: 13-CV-00021

                                Defendants.
_____

CHERYL MEYERS BUTH, hereby affirms and states under penalty of perjury:

1. I am duly admitted to practice before the United States District Court for the Western District of New York, and I maintain an office for the practice of law at MEYERS BUTH LAW GROUP pllc, 21 Princeton Place, Ste. 105, Orchard Park, New York 14127. I appear in this matter, along with Laurie A. Baker, Esq., as counsel on behalf of Defendant, SGT. KRUGER.

2. On September 12, 2019, attorneys for Plaintiff filed a motion seeking an Order requiring the New York State Department of Corrections and Community Supervision ("DOCCS") and the United States Marshals Service ("USMS") to

1

coordinate plaintiff's housing so that he is "available for attendance and for his testimony at trial…" (dkt #313).

3. Plaintiff's counsel requests that:

   a) Plaintiff be transferred to a facility "near the United States District Courthouse in Buffalo" so that

   b) his counsel can meet with him privately when court is not in session

   c) he can be transported to and from court each day

   d) but that he not be housed at Wende Correctional Facility (where the events giving rise to this lawsuit are alleged to have taken place and

   e) he not be housed at Attica Correctional Facility (where Defendant Blanar currently works).

4. The jury trial in this matter is currently scheduled to begin on November 7, 2019.[1]

5. I have consulted with each of the Defense attorneys in this case. The Defense jointly opposes the Plaintiff's motion in all respects.

6. Although due process prohibits the denial of access to the courts, a prisoner does not have a constitutional right to be present at the trial of his civil rights claim. *Vaughn v. Sposato,* 2013WL5774880 (EDNY 2013) (cites omitted). "The law . . . recognizes that there are countervailing considerations of expense, security, logistics, and docket control that prevent according prisoners any absolute right to be present [at any civil

---

[1] A motion to adjourn the trial was filed by attorneys for Defendant Adam Blanar on July 17, 2019 (dkt #308). The motion has not yet been decided.

2

rights trial initiated by them]". *Id. citing Holt v. Pitts,* 619 F.2d 558, 560 (6th Cir. 1980) ("Generally speaking, prisoners who bring civil actions . . . have no right to be personally present at any stage of the judicial proceedings"); *Stone v. Morris*, 546 F.2d 730, 735 (7th Cir. 1976) (holding that an incarcerated plaintiff "has no constitutional right to be produced at his own civil rights action"); *Perotti v. Quiones*, 2:10-cv-00086-JMS, 2013 WL4008188 at *1 (S.D.Ind. Aug. 5, 2013) (holding that the incarcerated plaintiff had "no constitutional right to be personally present at judicial proceedings in a civil case he initiated"); *Thomas v. O'Brien,* 2011 WL 5452012 (NDNY Nov 8, 2011) (holding that notwithstanding the constitutional right of access to the courts, an incarcerated plaintiff "does not enjoy a constitutional right to be physically present at the jury trial of his civil rights claim").

7. While an incarcerated plaintiff has no right to be present, the law requires a consideration of alternatives weighing the interest of the plaintiff in presenting testimony with the interest of the state in maintaining his confinement. *Stone*, 546 F.2d at 735. Factors to be considered include:

    a) costs and inconvenience of transporting a prisoner from his place of incarceration to the court;

    b) potential danger or security risks the presence of the inmate would pose to the court;

    c) possibility of staying the matter until the prisoner is released;

    d) probability of success on the merits;

    e) whether plaintiff's presence in person at trial would substantially further the resolution of the case.

    f) alternatives to reduce the burdens attendance imposes.

8. United States District Court Judge Glenn T. Suddaby in the Northern District of New York applied these factors in an excessive force case involving an incarcerated plaintiff and several Syracuse police officers. In *Jamison v. Metz,* 2014 WL 12893674 (NDNY Dec 1, 2014), the judge began by obtaining an estimate of the cost of transporting the plaintiff to and from court, the presence and availability of additional court security officers during the trial, mileage, the cost of hiring additional marshals to cover for personnel assigned to the trial, and other expenses.

9. Upon information and belief, in the instant case neither the USMS or the DOCCS has been served with, or had a chance to weigh in on, the Plaintiff's motion.

10. In *Jamison,* Judge Suddaby cited other cases in the Second Circuit recognizing that the inmate had no right to require the Court to transport him at taxpayer expense to and from the trial. He then reviewed the factors relevant to consideration of the motion. Finally, he acknowledged that the Second Circuit has instructed that a district court should also evaluate alternatives to reduce the burdens attendance imposes. *Id citing Rivera v. Santirocco,* 814 F2d 859, 864 n.8 (2d Cir. 1987) ("As compliance with writs of habeas corpus ad testificandum may be very costly, the district courts should consider alternatives to reduce the burdens compliance imposes, including: using a prisoner's deposition in place of his trial testimony, arranging the trial schedule to reduce the amount of time a prisoner must be away from his place of confinement and, in some cases, taking testimony at the prison or transferring the place of trial to the federal courthouse nearest the state prison").

11. The judge found that balancing the relevant factors weighed against issuing a writ of habeas corpus ad testificandum (one factor weighed in favor, two were neutral and three weighed against). He concluded that alternatives could include the inmate paying the cost of transportation and other expenses or having his written deposition transcript read in court or testifying via video or "the Court will be forced to take the sole reasonable action remaining; administratively close this action until it is advised that (1)Plaintiff has acquired the $14,177.94 necessary to pay, before trial the cost of his transportation to and from and safekeeping at trial by the United States Marshal's Service , (2) he has been transferred to a facility that has video-conference capability or (3) he has been released." *Id.*

12. Like in *Jamison,* balancing all of the relevant factors in this case weighs against granting Plaintiff's motion to be present for trial.

13. The first two factors, the cost of transportation and security concerns, weigh against plaintiff. With respect to transportation costs, this Court has to consider the distance the United States Marshals would have to drive each day of trial to/from outside the Buffalo Division of the WDNY (*see* ¶15). That cost would include mileage as well as paying personnel to transport him. It may also include paying additional personnel to backfill the positions/duties of the Marshals who are assigned to transportation responsibilities. Aside from the cost, the assignment or re-assignment of personnel may strain USMS resources which are stretched thin in our district.

14. Next, that cost figure would have to be calculated over the period of time the trial is expected to last. At the last court appearance, Plaintiff's counsel indicated the trial

would take less than a week; in contrast, Defense counsel estimates it would take at least 3 weeks.

15. As this Court is well aware, Wende C.F. and Attica C.F. are the only two maximum security state prisons in the Buffalo Division of the Western District of New York. Plaintiff objects to being housed in either of those facilities. The next closest maximum security facility is Five Points C.F. in Romulus, Seneca County, New York. Five Points C.F. is approximately 2 hours or 125 miles from Buffalo in the Rochester Division of the WDNY.

16. Plaintiff is currently housed at Greenhaven Correctional Facility, a maximum security prison in downstate New York. If DOCCS is unable to house Plaintiff at Five Points C.F., the next closest maximum security facilities are Elmira C.F. and Southport C.F. (both are approximately 3 hours from Buffalo (Chemung County) in the Rochester Division of WDNY.

17. In addition to the cost of transporting Plaintiff to court, his presence at trial raises security concerns. Plaintiff remains incarcerated as a twice convicted murderer.

18. The plaintiff is currently serving a 15-year to life sentence in the New York State Department of Corrections and Community Service for murder in the second degree (1997). In addition, plaintiff was convicted in the Northern District of committing a murder while engaged in a narcotics conspiracy in violation of 21 U.S.C. §841(b)(1)(A). United States v. Walker, 142 F.3d 103, 107-108 (2d Cir. 1998). In its appellate decision, the Second Circuit expressly recognized that the proof was sufficient to establish plaintiff's "shared intent of carrying out the killing." 142 F.3d at 114.

19. An Additional factor relevant to the security concern is the fact that United States District Judge Thomas McAvoy expressly found that the plaintiff had attempted to persuade a witness to provide a perjurious alibi for the plaintiff (*see also Diaz v. United States 3:10-cv-00350*(TJM) (28 U.S.C.§2255, dkt.9 filed 7/31/01, *Memorandum Decision & Order of McAvoy, D.J. at p.10)*

20. Judge McAvoy found Plaintiff's criminal history score had properly been calculated as CHC V. In addition to the state and federal murder convictions, Plaintiff's interrogatory responses and criminal history report indicate the following : 1990 conviction for criminal possession of a weapon in the fourth degree; 1991 conviction for escape in the third degree; 1991 conviction for criminal possession of controlled substance in the fifth degree; his 1992 sentence of 1-3 years after his probation was revoked for failing to remain in the jurisdiction of the court; his 1994 conviction and sentence of 7-1/2 to 15 years for attempted robbery of a man in Brooklyn, New York and criminal possession of a weapon second degree; and at the time of the federal offense plaintiff was on New York State parole.

21. Plaintiff's institutional record also demonstrates he has been involved in assaults with other inmates since being incarcerated.

22. This Court always seeks input from the USMS for recommendations about security issues in the courtroom. Based on past practice, the Defense anticipates that Plaintiff's presence would require a number of Marshals to be in the courtroom throughout the trial for safety reasons. The cost of additional security personnel is another factor weighing against Plaintiff's motion to be present for the trial.

23. Plaintiff has not paid for any costs associated with prosecuting this civil claim. The State has borne the cost of the defense; plaintiff's own lawyers are representing him *pro bono.* As Judge Suddaby noted in *Jamison,* "requiring the taxpayers (whether federal or state) to pay the cost of Plaintiff's transportation and safekeeping for the trial in this federal action, commenced by him, would confer on him a benefit that he would not enjoy had he not committed a felony and been sentenced to state prison". *Id.*

24. Aside from transport and security issues, two other factors, the probability of success on the merits and whether plaintiff's presence in person at trial would substantially further the resolution of the case, are neutral for the same reasons cited by Judge Suddaby in *Jamison.*

25. The only factor that arguably would weigh in favor of producing Plaintiff for trial is the fact he is serving two life sentences and, therefore, the case cannot be reasonably stayed until his release.

26. Plaintiff's counsel primarily relies on a 7th Circuit case cited above, *Stone v. Morris,* 546 F.2d 730,736 (7th Cir. 1976), in urging the Court to exercise its discretion for "among other reasons", to allow plaintiff to be present to testify and confer with counsel during trial.

27. However, Plaintiff's counsel does not offer any alternatives to producing plaintiff for in-person testimony. The Court is required to consider alternatives to reduce the burdens attendance imposes. Counsel does not explain why they could not confer with their client by phone during the trial or why his testimony could not be presented using his deposition transcript.

28. While not specifically considered by other courts, it should also be noted that the New York Crime Victim's Board receives notification of any settlement or judgment over $10,000 involving a prisoner. Even if the plaintiff were to recover an award in this case, only 10% of such funds would be initially available to him under New York's "Son of Sam" law. The New York Crime Victim's Board would attempt to redirect any remaining monies to the victims (or their representatives) of his crimes of conviction.[2] Regardless, any reasonable amount that might be awarded to Plaintiff pales in comparison to the cost of this case to taxpayers.

29. Depending upon the length of the trial, the cost to the State in attorney's fees alone for the defense of this action may easily exceed half a million dollars. Although plaintiff's attorneys are appearing *pro bono* at this juncture, they may in the future apply for a portion of their attorney's fees if plaintiff is successful on the merits of his claim.  Assuming the defendants are indemnified, the State would pay any award of compensatory damages pursuant to the New York Public Officers' Law. Permitting plaintiff's personal appearance at trial will drive the total cost of this case even higher and place an additional, arguably unnecessary, financial burden on taxpayers.

30. The Defense respectfully requests that this Court deny Plaintiff's motion. However, if the Court believes it needs additional information in order to appropriately balance the factors other courts have cited, the Defense suggests the issuance of an Order requiring Plaintiff's counsel to serve a copy of the motion on an appropriate representative of DOCCS and USMS; further, that those agencies be directed to provide the court with cost estimates and security plans necessary for the plaintiff's

---

[2] The other inmate who alleged he was assaulted during this same incident was Luis Caban. Mr. Caban settled his claim against these defendants for $9,950.  See 14-cv-0613 at Dkt# 30.

attendance at trial. The Defense respectfully requests a further opportunity to submit additional argument once such information is received and to appear for oral argument before the Court renders a decision.

The undersigned hereby affirms that the allegations of fact set forth above are true and correct to the best of my knowledge and are made under penalty of perjury.

Dated: September 17, 2019

  /s/Cheryl Meyers Buth
Cheryl Meyers Buth, Esq.
Laurie A. Baker, Esq.
MEYERS BUTH LAW GROUP PLLC
*Attorneys for Defendant*
  SERGEANT J. KRUGER
21 Princeton Place
Orchard Park, NY 14127
(716) 508-8598
cmbuth@mblg.us
labaker@mblg.us

10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WALTER DIAZ (94-A-5053)
a/k/a ERIC ROGERS,

        Plaintiff.

v.

SUPERINTENDENT D. ARTUS,
SGT. KRUGER,
OFFICER A. BLANAR,
OFFICER J. MYERS,      FILE NO.: 13-CV-00021
OFFICER T. McCANN,
OFFICER G. BARLOW-HARPER,
OFFICER R. MICHIENZI,

        Defendants.
_____

<u>CERTIFICATE OF SERVICE</u>

  I hereby certify that on September 17, 2019, I electronically filed the foregoing AFFIRMATION IN OPPOSITION TO PLAINTIFF'S MOTION FOR WRIT OF HABEAS CORPUS *AD TESTIFICADUM* FOR PLAINTIFF'S APPEARANCE AT TRIAL on behalf of Defendant Sgt. J. Kruger with the Clerk of the District Court using CM/ECF system and electronically served the following:

  Gregory Cheyne, Esq.
  Kate Frank Stamell, Esq.
  Yonatan Even, Esq.
  M. Brent Byars, Esq.
  CRAVATH, SWAINE & MOORE LLP
  *Attorneys for Plaintiff*
  825 8th Avenue
  New York, NY 10019-7474
  (212) 474-1000
  byars@cravath.com
  gcheyne@cravath.com
  kstamell@cravath.com
  yeven@cravath.com

Joel L. Daniels, Esq.
Daniel J. Henry, Jr., Esq.
*Attorneys for Defendant Adam Blanar*
42 Delaware Avenue, Suite 700
Buffalo, New York 14202
Telephone: (716) 856-5140
Fax No.: (716) 856-3106
*jdaniels38@aol.com*

Brian M. Melber, Esq.
Scott R. Hapeman, Esq.
PERSONIUS MELBER, LLP
*Attorneys for Defendant*
  OFFICER G. BARLOW-HARPER
2100 Main Place Tower
Buffalo, NY 14202
(716) 855-1050
bmm@personiusmelber.com
srh@personiusmelber.com

Dennis C. Vacco, Esq.
Eric Michael Soehnlein, Esq.
Sean M. O'Brien, Esq.
LIPPES MATHIAS WEXLER FRIEDMAN LLP
*Attorneys for Defendant*
  OFFICER J. MYERS
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202
(716) 853-5100
dvacco@lippes.com
esoehnlein@lippes.com
sobrien@lippes.com
Barry N. Covert, Esq.
Diane M. Perri Roberts, Esq.
Patrick J. Mackey, Esq.
LIPSITZ GREEN SCIME CAMBRIA LLP
*Attorneys for Defendant*
  OFFICER T. McCANN
42 Delaware Avenue, Suite 120
Buffalo, NY 14202
(716) 849-1333
bcovert@lglaw.com
droberts@lglaw.com
pmackey@lglaw.com

Joseph M. LaTona, Esq.
*Attorneys for Defendant*
  OFFICER R. MICHIENZI
403 Main Street, Suite 716
Buffalo, NY 14203
(716) 842-0416
sandyw@tomburton.com

Charles E. Graney, Esq.
Shannon Brae O'Neill, Esq.
WEBSTER SZANYI LLP
*Attorneys for Defendant*
  SUPERINTENDENT D. ARTUS
1400 Liberty Building
Buffalo, NY 14202
(716) 842-2800
tgraney@websterszanyi.com
so'neill@websterszanyi.com

                                                /s/ Cheryl Meyers Buth
                                                CHERYL MEYERS BUTH